IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., | No. C 12-02766 RS |
| Plaintiff, | **ORDER GRANTING MOTION TO TRANSFER** |
| v. | |
| TIVO, INC., | |
| Defendant. | |

## I. INTRODUCTION

Defendant TiVo, Inc. moves to dismiss or to transfer this patent action for declaratory judgment of noninfringement and invalidity to the Eastern District of Texas (E.D. Tex.), pursuant to the "first-to-file" rule. Plaintiff Cisco Systems, Inc. opposes the motion. This particular dispute grows out of the now familiar patent chess game in which the players vie for the right to designate where and when the tournament will be played. As each side can advance a credible claim to the prized mantle of "first-to-file," ultimately the decision must rest on where it makes the most practical sense to have the battle play out. Here, after consideration of the briefs, the arguments raised at the hearing, and for all the reasons set forth below, the conclusion follows that the appropriate forum is the E.D. Tex. Accordingly, TiVo's motion is granted, and the case is ordered transferred to the E.D. Tex. Court.

## II. BACKGROUND

Defendant TiVo is a supplier of digital video recorders ("DVRs"). It holds the right to the patents at issue in this action, including U.S. Patent Numbers 6,233,389 ("the '389 patent"), which claims DVR technology that allows users to record and replay television broadcasts, 7,529,465 ("the '465 patent"), directed to allowing multi-room viewing of television content, 7,493,015 ("the '015 patent"), claiming "overshoot correction" functionality for fast forwarding and rewinding, and 6,792,195 ("the '195 patent"), directed to "trickplay" functionality. TiVo is headquartered and has its principal place of business in Alviso, California, which is located in this District. It apparently maintains a distribution center in Fort Worth, Texas, a city located in the Northern District of Texas. Plaintiff Cisco similarly develops and supplies DVR technology. It sells approximately twenty different DVR models to customers that include cable and telecommunications providers such as Verizon, AT&T, and Time Warner Cable. It is headquartered and has its principal place of business in San Jose, California, but also maintains offices in Texas. TiVo insists that Cisco's DVR business is primarily based in Atlanta, Georgia, the location of Scientific Atlanta, a DVR vendor that Cisco purchased in 2006 to supplement its own business.

The procedural history underlying the patent battle between these parties reveals a dizzying back and forth between this district and its counterpart in eastern Texas. Cisco filed this suit on May 30, 2012, challenging the validity of the '389, '465, '015, and '195 patents, and seeking a declaration of non-infringement with respect to its DVR product lines. It did so purportedly to "ensure that all of TiVo's claims will be resolved against all of Cisco's DVRs in one suit, rather than having TiVo file separate lawsuits on Cisco's DVRs against each of Cisco's many customers." Pl.'s Opp'n at 1:14-16 (emphasis in original). A few days later, on June 4, 2012, TiVo filed a direct infringement action against Cisco in the E.D. Tex. alleging that numerous Cisco DVR products infringe the same four patents in dispute in this matter. As detailed below, that case now also encompasses claims later asserted by TiVo against several of Cisco's customers. Infringement contentions are due in that matter on August 15, and a fully-briefed motion by Cisco to transfer that case to this District is currently pending in the E.D. Tex.

Both parties have extensive experience litigating cases in this District, as well as in the E.D. Tex. Cisco notes that TiVo first asserted the '389 patent in the Northern District of California as

2

No. C 12-02766 RS
ORDER

early as 2002, and the '195 patent in a 2011 case filed against Microsoft, which was transferred to this Court from the Western District of Washington.[1] In 2004, TiVo successfully asserted the '389 patent against EchoStar in January 2004 in that District, and ultimately won substantial damages and injunctive relief. Then, in 2009, TiVo sued AT&T in the E.D. Tex. on the '389, '465, and '015 patents, alleging that Cisco DVRs infringed its patents. After TiVo obtained discovery against Cisco, and the Court issued a claim construction order, the parties ultimately settled.

TiVo is presently in active litigation against Verizon, Motorola, Time Warner, and Cisco, in the E.D. Tex., in three cases pending before the same presiding judge. Like the prior *AT&T* action, TiVo's case against Verizon rests upon the '389, '465, and '015 patents, and initially concerned DVR products supplied to Verizon by Motorola. In the course of discovery, however, Verizon disclosed that it had distributed a Cisco DVR to customers in late 2010, prompting TiVo to move for leave to amend its infringement contentions in July of 2011. Owing to the retirement of the presiding judge and the reassignment of the action, the motion was not granted until June 5, 2012, a date after the initiation of this case. TiVo thus filed its amended infringement contentions encompassing the Cisco DVR on the day fact discovery closed, roughly three years into the proceedings. *Verizon* is scheduled to go to trial in the E.D. Tex. in October of 2012.

By the time TiVo filed its motion to dismiss or to transfer in this case, the E.D. Tex. Court had recognized Cisco's DVR products were at issue in *Verizon*, prompting Cisco to file a motion for leave to intervene, in hopes of obtaining a stay. On July 18, 2012, however, after TiVo filed suit directly against Cisco, the successor presiding judge in the E.D. Tex. reconsidered that Court's prior order permitting TiVo to file amended infringement contentions against Cisco's DVR, and instead severed those claims and consolidated them with the later-filed direct infringement suit.

Following the initiation of *Verizon*, Motorola filed its own declaratory judgment action against TiVo in the E.D. Tex., challenging the '389, '465, and '195 patents. TiVo, in turn, named Time Warner Cable as a counterclaim defendant. Although TiVo served pleadings accusing Time Warner of selling infringing DVR devices "without limitation," it did not specifically identify any

---

[1] TiVo counters that Cisco has also voluntarily availed itself of the E.D. Tex. as a plaintiff in other patent actions, although those matters do not have any apparent connection to the products or patents at issue here.

3

allegedly infringing Cisco products in its pleadings until June 29, 2012 – again, after initiation of the instant suit, and in fact, during briefing on the instant motion. As in *Verizon*, the E.D. Tex. Court ultimately severed TiVo's claims concerning Cisco DVRs supplied to Time Warner in the *Motorola* action and transferred them to the later-filed direct infringement case between TiVo and Cisco. Claim construction in *Motorola* is currently scheduled for November of 2012, and trial is set to begin in May of 2013.

In support of its motion to dismiss or to transfer, TiVo emphasizes the E.D. Tex.'s familiarity with the underlying DVR technology. Cisco, by contrast, argues that all of its DVR products are at issue in these proceedings, whereas only one product line was challenged in the preexisting *Verizon* action. To the extent Cisco now has more product lines at issue in the E.D. Tex. litigation, it emphasizes that all of those matters have been consolidated into the later-filed direct infringement action. Cisco also urges that the bulk of the documentary evidence and the witnesses, all of the named inventors (seven are non-parties), several of the patent prosecutors, and some inventors of the relevant prior art, reside here, beyond the subpoena power of the E.D. Tex. Court.

## III. LEGAL STANDARD

The Declaratory Judgment Act permits courts the discretion to decline jurisdiction over declaratory judgment claims. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); 28 U.S.C. § 2201 ("…any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration ….") (emphasis added). Courts routinely do so under the "first-to-file" rule, the "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). The rule "favors the forum of the first-filed action, whether or not it is a declaratory action," *see Genetech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), in the service of "promot[ing] judicial efficiency and prevent[ing] the risk of inconsistent decisions that would arise from multiple litigations of identical claims." *Interactive Fitness Holdings, LLC v. Icon Health & Fitness, Inc.*, No. C 10-04628, 2011 WL 1302633, at *3 (N.D. Cal. Apr. 5, 2011). The rule "should not be disregarded lightly." *Alltrade, Inc. v. Uniwield*

4

*Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). That said, it is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*, 678 F.2d at 95.

In applying the rule, courts focus primarily on the chronology of the filings, the identity of the parties, and whether the issues presented in the successive actions "substantially overlap." *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 957-58 (N.D. Cal. 2008). The analysis may also encompass consideration of the "convenience factors" set forth in the transfer statute, 28 U.S.C. § 1404(a), including, "the convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations relating to the interest of justice." *Micron Tech., Inc. v. Mosaid Techs., Inc.,* 518 F.3d 897, 902-05 (Fed. Cir. 2008).

## IV. DISCUSSION

### A. Threshold factors

Although the first-to-file rule provides a relatively straightforward test for prioritizing proceedings between districts, here, application of the rule does not produce a clear result. TiVo requests dismissal or transfer on the premise that its existing cases in the E.D. Tex. meet the threshold requirements of the first-to-file rule: (1) chronology; (2) identity of the parties; and (3) "substantial overlap" of issues. As the foregoing procedural history makes clear, however, on the date that this case was filed, Cisco was not a party to any of the proceedings in Texas, and, with the exception of the settled *AT&T* matter, no Cisco products had been formally identified as infringing TiVo's patents.

In an attempt to minimize the significance of those facts, TiVo downplays the extent to which the identity of the parties and substantive issues must present commonality under the first-to-file rule. It quotes *Intersearch Worldwide*, a decision from this District,[2] noting that "exact identity

---

[2] TiVo also identifies some out-of-circuit cases standing for the principle that the analysis "turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute." *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 407 (E.D. Pa. 2008). Those cases, however, arguably conflate the distinct requirements set forth by this Court's precedents – namely, the identity of the parties and issues that "substantially overlap." *See Intersearch*, 544 F. Supp. 2d at 957-58. Moreover, even accepting that position for argument's sake, Cisco's products were not put at issue in *Motorola* until after this case was filed, and were never effectively at issue in *Verizon*.

5

No. C 12-02766 RS
ORDER

is not required to satisfy the first-to-file rule." 544 F. Supp. 2d at 959 n.6. The rule requires only that "some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." *Id.* The word "parties," however, implies that more than one overlapping party is ordinarily required to meet the first-to-file rule's "identity" requirement, and the particular facts of *Intersearch* support that conclusion. There, the court granted defendant's motion to dismiss plaintiff's trademark claims, pursuant to the first-to-file rule, where the defendant had previously sued plaintiff in New York over the same issues. Of course, were a patentee's preexisting litigation against third parties to preclude all other alleged infringers from obtaining declaratory relief in other venues, regardless of convenience or economy considerations, the identity requirement would have no meaning, the rule would be rendered unworkable. *See, e.g., In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 n.3 (Fed. Cir. 2010) (litigating a patent in a particular venue does not confer upon the patentee a "free pass to maintain all future litigation involving that patent in that venue").

Invoking another recent decision from this District, *Proofpoint, Inc. v. InNova Patent Licensing, LLC*, No. C 11-02288, 2011 WL 4915847, at *6-7 (N.D. Cal. Oct. 17, 2011), TiVo alternatively argues that a patentee's prior litigation against an alleged infringer's customers may meet the first-to-file rule's requirements. That suggestion is somewhat at odds with the "customer suit" exception to the first-to-file rule, which generally holds that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).[3] Although TiVo and Cisco debate the applicability of that doctrine to this action, it is not necessary to resolve that dispute in light of the result reached below, and given that *Proofpoint* is not as supportive to TiVo as it suggests.

In *Proofpoint*, plaintiff's declaratory judgment action was dismissed because the pleadings failed to establish the existence of an "actual controversy" sufficient to confer jurisdiction under the Declaratory Judgment Act. *Id.* at *2-6. The decision went on to note that even were declaratory

---

[3] It is typically invoked "where the first suit is filed against a customer who is simply a reseller of the accused goods, while the second suit is a declaratory action brought by the manufacturer of the accused goods." *Proofpoint*, 2011 WL 4915847, at *7 n.5.

6

jurisdiction perfected, it would be prudent to decline jurisdiction because of the pendency of preexisting litigation against Proofpoint's customers in the E.D. Tex. The opinion recognized that "[a]lthough the first-filed rule is not *clearly* applicable here because [plaintiff] Proofpoint is not a party to the Texas Action, the focus on judicial efficiency that underlies both the first-filed rule and the transfer analysis plainly supports the Court's decision to decline jurisdiction." *Id.* at *7 (internal citation omitted) (emphasis in original). The Court thus declined to exercise jurisdiction given that: (1) the challenged patents were asserted in the patentee's preexisting litigation; (2) the parties to the preexisting case were sophisticated and well-represented, and likely to raise many of the same defenses asserted in *Proofpoint*; and (3) the E.D. Tex. Court had already invested "considerable energy" in adjudicating the previously-filed case, including the likely issuance of a claim construction order, raising the prospect of conflicting judicial opinions should the later-filed case go forward. *Id.* at *7. TiVo maintains that the same analysis applies in this instance, where, analogously, the first-to-file rule is not met in the usual fashion since Cisco is not party to TiVo's previously-filed E.D. Tex. cases. While there are certainly some parallels between the instant case and *Proofpoint*, in that case, by the time the later suit was filed, Proofpoint's products had already been formally accused of infringement in the E.D. Tex. proceedings. Here, again, Cisco's products were not formally implicated in *Verizon* and *Motorola* at the time this matter was filed.[4]

Cisco insists that simple application of the first-to-file rule suggests that TiVo's motion should be denied because it had not been drawn into the E.D. Tex. litigation before it filed this suit, and invokes many cases for support. While that position might, at first blush, seem persuasive, it ignores the fact that TiVo made efforts to amend its infringement contentions to encompass Cisco's products almost a year before these proceedings were initiated. Those efforts were unavailing, not

---

[4] Cisco attempts to distinguish *Proofpoint* further on the grounds that there, unlike here: (1) the transfer statute's convenience considerations were not debated; and (2) intervention in the E.D. Tex. case was still reasonably available to the declaratory judgment plaintiff. Turning to the latter point first, now that Cisco is not a party to *Verizon* or *Motorola*, it will plainly have ample opportunity to defend itself in the proceedings which have just begun on TiVo's direct infringement claims. As for judicial economy, a consideration that figures prominently in application of the first-to-file rule, *see Meru Networks, Inc. v. Extricom, Ltd.,* No. C 10-02021, 2010 WL 3464315, at *1 (N.D. Cal. Aug. 31, 2010) (citing *Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 625 (9th Cir. 1991)), TiVo arguably has the stronger position, for reasons explained below.

7

due to any fault of TiVo's, but merely because the presiding judicial officer retired, and the case was reassigned. Had TiVo's motion to amend been granted more promptly, it would have had a fairly strong basis to invoke the first-to-file rule against Cisco's declaratory judgment action. None of the precedents Cisco identifies address this unusual factual circumstance. Instead, Cisco argues that TiVo "manufactured" the connection between Cisco DVRs and those earlier-filed cases. For the reasons set forth above, that is not entirely fair.

Moreover, to the extent that prior cases are helpful, they teach the first-to-file rule is not to be applied mechanistically, nor set aside only in "extraordinary circumstances," as Cisco suggests. *Pacesetter*, 678 F.2d at 95 ("not a rigid or inflexible rule"); *Genentech,* 998 F.2d at 937 (exceptions not unusual); *Church of Scientology of California v. United States Dep't of the Army*, 611 F.2d 738, 749, 750 (9th Cir. 1979) ("[T]he "first to file" rule normally serves the purpose of promoting efficiency well and should not be disregarded lightly. Circumstances and modern judicial reality, however, may demand that we follow a different approach from time to time…."). The simplistic approach urged by Cisco, which essentially calls for comparing the parties listed on the dockets in the relevant actions and the dates each was filed, is of little assistance in a case such as this, where both parties lay a plausible claim to first filer status, and the substantive overlap of the issues litigated, though not complete, is significant. In short, the first-to-file rule does not supply the answer to the pending venue related motions in this particular case.

B. Section 1404 factors

As noted above, the first-to-file rule encompasses the transfer statute's "convenience factors." Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought…."[5] In adjudicating the instant motion it is therefore appropriate to consider such matters as "the convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations

---

[5] As an initial matter, the parties do not dispute that this case could have been brought in either venue. *See Glaxo Group Ltd. v. Genentech, Inc.,* No. C 10-00675, 2010 WL 1445666, at *2 (N.D. Cal. Apr. 12, 2010) (movant must show that the transferee court is one in which the original action could have been brought).

8

No. C 12-02766 RS
ORDER

relating to the interest of justice." *Micron Tech.,* 518 F.3d at 902-05. While the "general rule favors the forum of the first-filed action, whether or not it is a declaratory judgment action," the Federal Circuit has recognized that "trial courts have discretion to make exceptions to this general rule in the interest of justice or expediency, as in any issue of choice of forum." *Id.* at 904 (citing *Genentech*, 998 F.2d at 937). Thus, a "district court may consider a party's intention to preempt another's infringement suit when ruling on the dismissal of a declaratory action, but that consideration is merely one factor" of many to be assessed, including "the convenience and availability of witnesses, the absence of jurisdiction over all necessary or desirable parties, and the possibility of consolidation with related litigation." *Id.*

### 1. Interests of justice

Analyzing the interests of justice entails an inquiry into "whether efficient and expeditious administration of justice would be furthered" by transfer. *Sherar v. Harless*, 561 F.2d 791, 794 (9th Cir. 1977); *accord Regents of the Univ. of Cal. v. Eli Lilly & Co.,* 119 F.3d 1559, 1565 (Fed. Cir. 1997). Matters of judicial economy "may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents,* 119 F.3d at 1565 (quoting *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220-21 (7th Cir. 1986)). Thus, in patent litigation "in which several highly technical factual issues are presented and the other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues." *Id.*

Here, the interests of justice favor transfer, as the E.D. Tex. Court is entertaining the weight of the litigation concerning TiVo's DVR patents, and will soon have invested significant resources in claims construction and trial proceedings in TiVo's other cases, regardless of where the dispute between TiVo and Cisco is resolved. Should TiVo's motion to transfer be denied, and this case progress in parallel to the E.D. Tex. cases, there is certainly some risk of duplicative proceedings and inconsistent judicial decisions, given the substantial overlap in subject matter. To be sure, *Verizon* and *Motorola* are much farther along in the process than TiVo's recently-filed direct infringement action against Cisco, a factor that was apparently of some moment to the E.D. Tex. Court when it determined to sever TiVo's claims against Cisco from those previously-filed matters.

9

Still, the Texas Court is likely to develop considerable familiarity with TiVo's claims and defendants' counterclaims in disposing of the earlier-filed cases. The Federal Circuit has noted that "[e]xceptions [to the first-to-file rule] are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech,* 998 F.2d at 937. Even if the first-to-file rule does not, strictly speaking, apply, a departure may be warranted if there is "the possibility of consolidation with related litigation." *Id.* at 938. That is because "the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.,* 566 F.3d 1349, 1351 (Fed. Cir. 2009).

Granted, it is not unusual for the claims of heavily-litigated patents to be construed in separate proceedings or even multiple fora, and the fact that the E.D. Tex. Court will soon be required to hold *Markman* hearings in *Verizon* and *Motorola*, and in all likelihood, construe many of the same claims to be advanced against Cisco in these proceedings, does not necessarily settle the matter. Noting that invalidity and infringement analysis require individual assessment of the asserted claims, as well the accused product, Cisco insists that its "DVRs are substantially different from Motorola DVRs because they have different software, hardware, design, and functionality, which were developed by different engineers and different companies." Pl.'s Opp'n at 12:2-4. Cisco also emphasizes that not all of its DVR product lines have been accused of infringement in the Texas cases. To this, TiVo replies that the "underlying basic technology is in the same area and the infringement issues will involve similar technical concepts." Def.'s Reply at 4:22-23. While the arguments advanced by each side are valid, the balance tips in favor of the E.D. Tex. in light of its "head start" in these matters.

2. Other factors

In assessing a motion to transfer, the Court may also consider, *inter alia*, the convenience of the parties and witnesses, and ease of access to sources of proof. *See Gulf Oil Co. v. Gilbert,* 330 U.S. 501, 508-09 (1947); *Micron Tech.,* 518 F.3d at 902-05. Cisco urges that these factors support its position. Indeed, it has identified some documentary evidence, as well as non-party witnesses, who reside in this District, beyond the jurisdiction of the Texas Court. TiVo replies that Cisco's DVR business is mainly operated from Atlanta, Georgia, rather than this District, and that most

10

evidence and many witnesses are located there. Such considerations would have greater salience if this were a dispute between genuinely local parties. In reality, however, both Cisco and TiVo are large and sophisticated companies, quite accustomed to operating – and litigating – all around the country, including in the E.D. Tex. Both Cisco and TiVo are undoubtedly capable of furnishing documentary evidence in electronic form wherever it may be needed. As TiVo further points out, the inventors named in its DVR patents have already been deposed repeatedly in connection with the preexisting E.D. Tex. proceedings without incident. To the extent Cisco suggests that it would be costly for witnesses to travel to the E.D. Tex. to give testimony, in light of the scope and overall expense of litigating a case such as this, as well as the parties' resources, that contention is similarly unpersuasive. The transfer statute's "private interest" factors do not strongly support granting or denying the motion.

## V. CONCLUSION

In service of the interests of justice and judicial economy, TiVo's motion to transfer is granted. To the extent TiVo requests dismissal, the motion is denied. The Clerk is directed to transfer the case file to the E.D. Tex.

IT IS SO ORDERED.

Dated: 8/10/12

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE